[redacted]

## COPE v. FAHRENWALD.

Court of Customs and Patent Appeals. December 19, 1929.

Patent Appeal No. 2165.

[redacted]

Harry Frease, of Canton, Ohio, for appellant.

Smith & Freeman, of Cleveland, Ohio (Harold E. Smith, of Cleveland, Ohio, and Hervey S. Knight, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge. This is an appeal, in an interference proceeding, from the decision of the Commissioner of Patents awarding priority of invention to appellee. The invention relates to resistor grids for electric furnaces.

[redacted] Several counts were involved in the original interference. The issue presented here, however, is limited to count 2, which reads as follows:

"2. A grid formed of a bar of substantially T-shaped, cross-sectional shape bent upon itself to provide a plurality of vertical

parallel portions connected at alternate ends by curved portions."

The applications of the parties were filed as follows: Cope, September 17, 1923; Fahrenwald, May 19, 1924. As Fahrenwald was the junior party, he had the burden of proof.

The Examiner of Interferences, the Examiners in Chief, and the Assistant Commissioner of Patents have concurred in awarding priority of invention to appellee. In view of the fact that the evidence has been given extended consideration in the opinions of these tribunals, we will confine this discussion to such matters as are necessary to a determination of the precise issues before us.

It appears from the record that appellant was chief engineer and vice president of the Electric Furnace Company, manufacturers of electric furnaces, at Salem, Ohio. It further appears that appellee, a metallurgist, had developed a heat-resisting alloy metal, which would resist high temperatures, and, in association with the Electro-Alloys Company of Elyria, Ohio, was engaged in the production and sale of heat resisting alloy castings for various purposes, including those for use in "the electric resistance heating field," and that, some time in the spring of 1920, appellee had designed and made an experimental cast resistor grid from his alloy metal, but, as it did not "exhibit a T-shaped cross-section," does not support the claim in issue. This experimental grid was not satisfactory for two reasons, namely: First, it was too small for commercial purposes; second, it "showed very undesirable casting characteristics, in that, *with the approximately rectangular cross-section employed, it was extremely difficult to make castings free from an excessive amount or number of shrinkage cracks or porosity.*" (Italics ours.)

There is some evidence tending to prove that later in that year—1920—appellee had cast a T-shaped resistor grid from his new heat-resisting alloy metal, and that, in response to a letter from Cope under date of January 17, 1921, addressed to the Electro-Alloys Company, this T-shaped grid was shown to Cope in March of that year. However, as the case may be disposed of without passing upon this issue, we do not consider it.

On June 29, 1922, Fahrenwald wrote the following letter to appellant:

"Dear Mr. Cope: Arrangements are being completed for production of heat-resisting alloy castings thru the Ohio Steel Foundry Company, and as I *shall only exclude from my contracts with them existing agreements, I write to ask whether you still propose working out the cast resistor end of this field. If you do not, I shall include this with the general castings business,* but if you do, I think it probable on account of pending activities with the larger castings business that I shall have more time to devote to this now than later. * * *" (Italics ours.)

Appellant replied as follows:

"Dear Mr. Fahrenwald: Replying to your inquiry of June 29th relative to cast resistor material, we wish to advise that we desire to work out the manufacture and use of this material at as early a date as possible.

"We are starting to reline the small furnace of which we told you and expect to have this in shape for operation the fore part of next week, at which time we would be glad to have you come down to our plant and see what can be done. We shall advise you about two days in advance of the time when we can have the furnace heated.

"If it should develop that we can handle the manufacture of this material successfully we would like also at this time to have your specific proposition as to retainer, license and other fees. * * *"

Appellee replied, advising appellant as to the raw materials to have on hand, and that the matter of retainer and license fees would be discussed when he visited appellant's factory.

Following this preliminary correspondence between the parties, appellee visited the Electric Furnace Company's plant in July, 1922. Appellant had made a channel-shape pattern grid, which he had hoped could be cast from appellee's heat-resisting alloy metal on the occasion of appellee's visit. It appears conclusively from the record that considerable discussion was had at that time between appellant, appellee, and others regarding the melting of appellee's heat-resisting alloy metal; that appellee explained the difficulties incident to casting a channel-shaped resistor grid, and, at this time, suggested to appellant the advisability of casting the resistor grid in the T-form defined in the count in the interference. This seems to be conceded. We quote from appellant's brief:

"And, it being admitted by Cope that Fahrenwald suggested the T-shape of his enameling bar for use in a resistor grid after Cope had devised a channel section for the grid, it is only necessary to consider the facts which are conceded or established, as far as they have a bearing on the questions of law relied upon. * * *"

In his decision the Examiner of Interferences, among other things, said:

"Fahrenwald prior to Cope's earliest work in the field of bar resistor grids had made re-

sistor grids of the type of Exhibit 1 which answered every part of count 2, except the specification of the T-shaped cross-section. It is true the suggestion came at a conference based on grid forms proposed by Cope with Fahrenwald present merely as an expert in casting, particularly in casting his own alloys. Nevertheless he was under no such fiduciary relation to Cope as would cause to inure to Cope's benefit under the employer-employee doctrine any invention which was ancillary to Cope's invention if it were also ancillary to his own. The evidence is clearly to the effect that grids of the type of Exhibit 1 are difficult to cast out of high temperature allows [alloys] and that bars of T-section are simpler to cast. The T-form is therefore as much an improvement on grids like Exhibit 1 invented by Fahrenwald as it is of a grid of channel form such as was made by Cope prior to July, 1922, and suggested to Fahrenwald by him at that time. Count 2 will therefore be adjudged to Fahrenwald."

This finding was affirmed by the Examiners in Chief and, in turn, by the Assistant Commissioner.

It is contended by counsel for appellant that Fahrenwald's suggestion of the T-shaped grid was merely that of a metallurgic foundry expert, whose advice was sought and obtained by appellant for the sole purpose of aiding him in casting resistor grids from the heat-resisting alloy metal of appellee; that, while the "T-form" was a valuable addition, it was ancillary and subordinate to appellant's generic invention—the channel-shaped grid; and that, as appellee was present for the sole purpose of aiding and advising appellant in the use of the heat-resisting alloy metal, any valuable additions to appellant's generic invention, suggested by appellee, would inure to appellant's benefit under the so-called employer-employee doctrine; and that, therefore, the tribunals of the Patent Office erred in awarding priority of invention to appellee. Several cases have been cited by counsel for appellant in support of his contention.

■ If the parties occupied the relation of employer and employee, and, if Fahrenwald was present for the purpose of putting Cope's invention into practical form, any valuable additions, not in themselves amounting to invention, would inure to the benefit of Cope. Larson v. Crowther, 55 App. D. C. 58, 1 F.(2d) 761. In our opinion, however, these principles of law are not applicable to the facts in this case.

We think it is apparent, from the correspondence between the parties and from the testimony as to what occurred at appellant's plant in July, 1922, that appellee was not employed in any capacity by appellant, and that, as stated by the tribunals below, the T-shaped form of grid, suggested by appellee, was as much an improvement over the original resistor grid perfected by appellee as it was over the channel-shaped grid perfected by appellant. This view of the facts seems to be confirmed, to some extent, at least, by a written license agreement entered into by the Electric Furnace Company (of which company appellant was then vice president) with appellee under date of September 1, 1922, in which it was agreed that, in consideration of certain sums, as "royalties," to be paid to appellee, appellant's company should have the exclusive right to the manufacture, use, and sale of appellee's "metallic resistors heating elements," *regardless of their composition*. The parties thereto operated under this agreement for a considerable length of time. It would seem strange indeed for appellant's company to agree to pay royalties for the use of appellee's metallic resistors, whether or not made of appellee's heat-resisting alloy metal, if the T-shaped grid was the valuable one, and appellant believed that he was the original inventor thereof.

We are satisfied that the decision below is in harmony with both the law and the facts. It is therefore affirmed.

Affirmed.